# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CENTRAL ALABAMA DIAGNOSTICS, LLC** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.** |
| | ] | **2:15-CV-1840-KOB** |
| **TOSHIBA AMERICAN MEDICAL SYSTEMS, INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

In the fabled movie *The Princess Bride*, Inigo Montoya and the giant Fezzik implore Miracle Max to return life to Westley, the story's hero, so he can save Buttercup, the heroine, from marriage to evil Prince Humperdinck.  Before doing so, Miracle Max explains the difference between "mostly dead" and "all dead":

> *Miracle Max* [looking at Westley]: He  probably owes you money huh? I'll ask him.

> *Inigo Montoya*: He's dead.  He can't talk.

> *Miracle Max*: Whoo-hoo-hoo, look who knows so much.  It just so happens that your friend here is only *mostly* dead.  There's a big difference between *mostly* dead and *all* dead.  Mostly dead is *slightly* alive. With all dead, well, with all dead there's usually only one thing you can do.

> *Inigo Montoya*: What's that?

> *Miracle Max*: Go through his clothes and look for loose change.

THE PRINCESS BRIDE (20th Century Fox 1987). Unfortunately for the parties (and the court), Miracle Max did not explain the difference between a mostly "new" MRI system and a mostly "old" MRI system.[1]

Plaintiff Central Alabama Diagnostics, LLC ("CAD") contends that Defendant Toshiba American Medical Systems, Inc. represented and promised that it could deliver a *new* MRI with a new magnet and electronics along with some limited refurbished accessories (the "mostly new MRI"). Toshiba, however, delivered a mostly old MRI, which, in CAD's view, is as useful as all dead.

Toshiba, on the other hand, says that it never promised to deliver a mostly new MRI. Instead, Toshiba's argument runs, its promise allowed it to deliver a refurbished MRI that could contain *any* combination of used components and perhaps with some new ones. The issues are whether Toshiba misled CAD into believing it would provide a mostly new MRI and whether Toshiba promised to deliver a mostly new MRI rather than a mostly old MRI, like it delivered.

The matter comes before the court on CAD's and Toshiba's cross motions for summary judgment (docs. 103, 106). In addition to the breach of contract claims, which include Toshiba's counterclaim premised on CAD's failure to accept and pay for the delivered MRI, Toshiba moves for summary judgment on CAD's claims of fraud by suppression, promissory fraud, and promissory estoppel. CAD, which asks for various damages and rescission of the contract, moves for summary judgment on the breach of contract claims only.

For the reasons stated in this Memorandum Opinion and on the record at the court's December 11, 2017, motion hearing (doc.133), the court will GRANT Toshiba's motion for

---

[1] The court will use "MRI," a colloquial term for magnetic resonance imaging machines, and "MRI system," perhaps the more accurate term, interchangeably.

summary judgment as to CAD's promissory fraud and promissory estoppel claims. But the court will DENY Toshiba's motion for summary judgment as to the suppression and breach of contract claims. The court will likewise DENY CAD's motion for partial summary judgment on the breach of contract claims.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In reviewing the evidence submitted, the court

must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986); *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).

The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282.

The filing of cross motions for summary judgment does not affect the applicable Rule 56 standard. *See, e.g.*, *United States v. Oakley*, 744 F.2d 1553, at 1555-56 (11th Cir. 1984). The Eleventh Circuit has noted that "[c]ross motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Id*. at 1555. So, just because both sides assert that no genuine issues of material fact exist does not mean the court must accept their word.

## FACTS

The court and the parties agreed generally on the critical facts involved in this case at the December 11, 2017, motion hearing. (Doc. 133 at 3-6).

Briefly stated, Toshiba sells both new and refurbished MRI systems. CAD's investors hired MedWorks, a medical imaging equipment dealer, to procure MRI systems for CAD. In November 2014 or early December 2014 in an effort to provide CAD with a new MRI at a

competitive price, Toshiba brought to the table a plan to sell an MRI with a new magnet and accompanying electronics, but refurbished accessories, such as coils, table pads, and positioners, that is, a mostly new MRI. The mostly new MRI would be new in the most important respects, including the new magnet, and, Toshiba hoped, priced competitively.

Two months later, CAD agreed to purchase from Toshiba an MRI detailed in an offer (the "Quotation") dated February 26, 2015. After reviewing it with an attorney, CAD signed the Quotation on March 16.

The key language contained in the Quotation in dispute in this case reads: "[t]his quotation is for a refurbished Vantage Titan 1.5 MR system. This system may include refurbished RF coils, positioning devices, [and] table pads as detailed in the system configuration." (Doc. 105 ¶ 29).

Notably, the Quotation did not contain any detailed system configuration. The Quotation also includes a "Limitation of Liability Clause" that purports to limit liability for both parties to the amount actually paid by CAD to Toshiba under the agreement:

> Neither Toshiba nor customer will under any circumstances be liable for consequential, special, incidental, or exemplary damages or economic loss arising out of or related to the transactions contemplated in this agreement, even if either party is apprised of the likelihood of such damages occurring. In no event will either party's liability to the other (whether based on an action or claim in contract, tort, including negligence, strict liability, or otherwise) arising out of or relating to the transactions contemplated in this agreement exceed the aggregate amount actually paid by customer to Toshiba under this agreement.

(Doc. 115-25 at 46).

Toshiba "booked" or finalized the Quotation on May 27, 2015. E-mails sent among members of Toshiba's order-fulfillment department show that they booked the Quotation knowing that Toshiba would be unable to provide a new magnet, but believing or thinking that

the Quotation's terms could be met with a used magnet because the Quotation called for a refurbished system.

Toshiba planned to fulfill the Quotation with a refurbished MRI that Cooper University Hospital had returned in early May (the "mostly old MRI"). Rodney Fountain, a Toshiba sales representative who handled most of the communication for the transaction, told Toshiba's order-fulfillment department that CAD would be fine with receiving "the system with the high-capacity table." (Doc. 105 ¶ 37). Later, Toshiba's order-fulfillment department told Mr. Fountain to ensure that CAD knew it would likely receive a used magnet. They also forwarded to Mr. Fountain a list of the parts filling the Quotation, noting that most of the parts would be from the Cooper Hospital MRI. Mr. Fountain did not forward the parts list to MedWorks or CAD.

Toshiba began delivering and installing the mostly old MRI at CAD's imaging center in mid-August 2015. During the installation, CAD discovered that the MRI was mostly old and not mostly new; the name of Cooper Hospital on the magnet was a dead giveaway. CAD did not pay for the MRI and did not allow Toshiba to finish installing it. CAD paid to remove and store the mostly old MRI when Toshiba refused to do so.

## DISCUSSION

CAD asserts that the Quotation entitled it to an MRI system with a new magnet and accompanying electronics with only refurbished "RF coils, positioning devices, [or] table pads"—a mostly new MRI. Toshiba argues that the Quotation allowed it to deliver a MRI system with any or all refurbished parts, including RF coils, positioning devices, and table pads, as well as old magnets and electronics—the mostly old MRI. The court will address CAD's fraud claims first and then turn to the breach of contract issues.

1. Fraud By Suppression

Under Alabama law, a defendant commits fraud in the inducement by suppressing material facts when it has a duty to speak truthfully during negotiations. *Exxon Mobil Corp. v. Alabama Dep't of Conservation & Natural Res.*, 986 So. 2d 1093, 1129 (Ala. 2007). "In such cases, the aggrieved party, in effect, says 'I would never have entered into the contract if you had not induced me to do so by incorrect statements or omissions of material facts.'" *Id*. The elements of fraud by suppression are: "(1) the defendant had a duty to disclose an existing material fact; (2) the defendant concealed or suppressed that material fact; (3) the defendant's suppression induced the plaintiff to act or refrain from acting; and (4) the plaintiff suffered actual damage as a proximate result." *Emery v. Talladega Coll.*, 169 F. Supp. 3d 1271, 1288 (N.D. Ala. 2016).

The court finds that Toshiba had a duty to disclose an existing material fact and that a genuine issue of material fact exists as to whether Toshiba intentionally concealed that it could no longer provide a mostly new MRI and whether CAD reasonably relied on Toshiba's alleged representations.

Accordingly, the court will DENY Toshiba's motion for a summary judgment on this claim.

a. *Duty to Disclose an Existing Fact*

In Alabama, whether a defendant has a duty to disclose an existing material fact is a question of law. *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998). At the motion hearing, Toshiba acknowledged that it does not contest that it had a duty to disclose existing material facts. (Doc. 133 at 46). And the court finds that, specifically, Toshiba had a duty to disclose that its ability to provide a mostly new MRI had changed because Toshiba knew

that CAD was only in the market for a new MRI or something like the mostly new MRI with new magnet and electronics.

    *b. Concealment*

Second, a genuine issue of material fact exists as to whether Toshiba concealed that it could not provide a mostly new MRI. The evidence indicates that Rodney Fountain knew that CAD was only looking for a new MRI or mostly new MRI. And when Toshiba's order-fulfillment department picked the mostly old MRI instead of a mostly new MRI for CAD's order, they told Mr. Fountain. But Mr. Fountain sat on that knowledge. So a jury could reasonably infer that Mr. Fountain, having known all along that CAD only wanted a new or mostly new MRI, intentionally declined to forward the information to CAD and jeopardize the sale.

Toshiba argues that the court should not consider Mr. Fountain's failure to inform CAD that the order-fulfillment department picked the mostly old MRI because MedWorks's representatives Wendell Gibson and Randall Spradlin testified that they did not think Mr. Fountain intentionally lied to them. However, the court finds no evidence or testimony that at the time of his deposition Mr. Gibson knew that Mr. Fountain was the person in the chain of communication who withheld that information. That Mr. Gibson incorrectly blamed the order-fulfillment department or someone else at Toshiba is immaterial because he lacked the relevant knowledge of those facts. (*See* Doc. 115-12 at 89). Randall Spradlin also testified that he did not think Mr. Fountain intentionally lied to them, but, when later confronted with the e-mails that Mr. Fountain failed to forward, Mr. Spradlin testified that he believed Mr. Fountain should have provided that information. (Doc. 115-18 at 40-41, 55-57).

Based on these facts and circumstances, the court finds that a reasonable jury could conclude that Mr. Fountain intended to suppress the fact that CAD would be receiving the mostly old MRI.

   *c. Inducement and Reasonable Reliance*

Third, a genuine issue of material fact exists as to whether CAD reasonably relied on Toshiba's representation that it could provide the mostly new MRI. Toshiba contends that CAD did not reasonably rely on any of its alleged oral representations because the written contract directly contradicted them. A plaintiff's reliance on an oral assertion can be *per se* unreasonable when the plaintiff ignores written contract terms. *See Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997) ("[T]he trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms."). But, the Quotation that became the contract did not identify which components would in fact be refurbished—only that "RF coils, positioning devices, [and] table pads" *may be* refurbished. In stark contrast, the Quotation was silent on whether the magnet was to be new or refurbished. As discussed on the record at the motion hearing and in this Opinion below, whether the contract provided for a Mostly New MRI or Mostly Old MRI is ambiguous.

For those reasons, the court will DENY Toshiba's motion for summary judgment as to CAD's claim of fraud by suppression.

   2. <u>Promissory Fraud</u>

CAD claims that Toshiba committed promissory fraud because it knew it would be unable to fulfill the Quotation's alleged promise to deliver a mostly new MRI. A defendant

commits promissory fraud if it promises to perform while having no intent to keep that promise.

*Exxon Mobil*, 986 So. 2d at 1130 (emphasis omitted).  Promissory fraud claims are difficult to prove because a "mere failure to perform is not evidence of a lack of intent to perform at the time the contract was formed."  *Id.*

> The elements of [promissory] fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation . . . . (5) [P]roof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive.

*Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala. 1988).

CAD points to the lack of new magnets at the time Toshiba booked the Quotation and argues that, because Toshiba knew it had no new magnets, it knew it could not perform its promise.  CAD, however, has identified insufficient evidence that, at the time Toshiba booked the contract, Toshiba believed it promised to provide a mostly new MRI with a new magnet and developed an intent not to perform that promise.  *See Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776-77 (Ala. 1998) (concluding that plaintiff failed to present substantial evidence of fraud where it introduced no direct evidence of defendant's intent or indirect evidence of similar unkept promises by defendant).

The Quotation could say what CAD thinks: Toshiba promised to provide an MRI with *only* refurbished RF coils, positioning devices, and table pads.  It could also say that Toshiba may provide a refurbished MRI with any refurbished parts, including magnets *and not limited to*, RF coils, positioning devices, and table pads.  And while Toshiba's interpretation could be incorrect, a misinterpretation and subsequent failure to perform would not be evidence of promissory fraud.  *See Exxon Mobil*, 986 So. 2d at 1130.  Without any evidence that Toshiba

intended not to perform the act that it believed it promised, no reasonable jury could find that Toshiba committed promissory fraud.

CAD has pointed to *Sealing Equipment Products Co. v. Velarde*, 644 So. 2d 904 (Ala. 1994), in support of its position that its promissory fraud claim can work alongside an ambiguous contract. In *Sealing*, the plaintiff provided evidence showing that both the plaintiff and defendant understood the ambiguous contract to mean the same thing. *Sealing*, 644 So. 2d at 909. Accordingly, the ambiguous contract did not defeat the promissory fraud claim because the plaintiff could still show that the defendant had the requisite intent to defraud. *Sealing*, however, is distinguishable because the contract here is ambiguous *and* CAD has failed to establish that Toshiba understood the contract, at the time it made it, to mean mostly new MRI rather than mostly old MRI.

The court will GRANT Toshiba's motion for summary judgment as to CAD's promissory fraud claim.

3. <u>Promissory Estoppel</u>

Under an estoppel theory, CAD claims that Toshiba's promises required it to provide a mostly new MRI. "A promise which the promisor should reasonably expect to induce action or forbearance of definite and substantial character and which does so is binding if injustice can be avoided by enforcement thereof." *Davis v. University of Montevallo*, 638 So. 2d 754, 757 (Ala. 1994). Similar to its promissory fraud claim, CAD's promissory estoppel claim cannot withstand summary judgment because, outside the Quotation, insufficient evidence exists for a jury to conclude that CAD unequivocally promised to provide a mostly new MRI. During back-and-forth negotiations, Toshiba proposed a plan to provide the mostly new MRI with a new magnet because CAD wanted a new MRI, but Toshiba could not provide one at an acceptable

price. CAD's evidence is insufficient for a reasonable jury to conclude that Toshiba's plan—which CAD did not accept or act on until it had signed the Quotation several months later—was a "[a] promise which the promisor should reasonably expect to induce action." *See Davis*, 638 So. 2d at 757. Accordingly, the court will GRANT Toshiba's motion for summary judgment as to CAD's promissory estoppel claim.

      4. <u>Breach of Contract</u>

CAD claims that Toshiba breached the Quotation by failing to deliver a mostly new MRI. Toshiba argues that the Quotation allowed it to provide a mostly new MRI system *or* a mostly old MRI system.

Alabama law provides that, when interpreting a contract, the court first must look to the "four corners of the contract" itself, and, if the contract is unambiguous, the court should determine the parties' intentions from the plain meaning of the contractual language. *Vesta Fire Ins. Corp. v. Liberty Nat. Life. Ins. Co.*, 893 So. 2d 395, 404 (Ala. Civ. App. 2003). But "[a] contractual provision is ambiguous if it is reasonably susceptible to more than one meaning." *FabArc Steel Supply, Inc. v. Composite Const. Systems, Inc.*, 914 So. 2d 344, 357 (Ala. 2005). If a contract's terms are ambiguous, the court should use the rules of contract construction to try to resolve the ambiguity. *Id.* If the application of the established rules of contract construction does not resolve the ambiguity, the resolution likely becomes a task for the jury. *See id.*

The key language at issue reads: "[t]his quotation is for a refurbished Vantage Titan 1.5 MR system. This system may include refurbished RF coils, positioning devices, [and] table pads as detailed in the system configuration." For the reasons discussed on the record at the December 11, 2017, motion hearing and below, the court finds that a genuine issue of material

fact exists as to whether the Quotation called for a "mostly new" or permitted a "mostly old" MRI system.

Although the key language calls for a "refurbished" MRI system, which would normally permit Toshiba to provide a mostly old MRI, the second sentence could limit the term "refurbished" to accessories. However, the inclusion of the word "may" beside "include" creates an ambiguity in the list. Although the term "include" typically notes an illustrative and non-exhaustive list, the use of the term "may" suggests that Toshiba *may not* include refurbished parts unlike those included in the list. The canons of contract interpretation and construction do not resolve this ambiguity. And, as discussed at the motion hearing, none of the Quotation's other terms or provisions shed light on what kind of MRI system the Quotation described.

Toshiba asserts that the court should follow *Black Warrior Minerals, Inc. v. Fay*, 82 So. 3d 650 (Ala. 2011), which, Toshiba claims, dictates a result in its favor. *Black Warrior*, however, merely stands for the general proposition that the word "include" when used in a contract likely elaborates or clarifies a preceding term. For example, in *Black Warrior*, which involved a guaranty contract, the parties used the term "include" to clarify that the guaranty at issue included "all existing debt" and "all future obligations." 82 So. 3d at 651-53. The terms "all existing debt" and "all future obligations" left nothing to the reader's imagination; they illustrated that the guaranty included all debts. *Id.*

However, in the Quotation, the terms following "may include" are far less broad than those in *Black Warrior*. In this case, a jury could conclude that Toshiba's use of three accessories in the list following "may include" signified its intent to exclude non-accessories, such as magnets, from the contract's definition of "refurbished." Or the jury could conclude that Toshiba intended and CAD understood the list following "may include" to identify only

examples of components in the MRI system without limiting the kinds of refurbished parts the system could include. *Black Warrior* does not provide any guidance to the court to resolve that ambiguity.

CAD and Toshiba both identify evidence that their representatives understood the Quotation's language to be in their favor. Because the key language is ambiguous and the rules of contract construction do not resolve the ambiguity one way or the other, the case turns on the credibility of these individuals and the relative weight of that evidence alongside the circumstances of the transaction. The court cannot resolve such questions at the motion for summary judgment stage so the court must deny the cross-motions for summary judgment on the breach of contract claim. *See United States v. Stein*, slip op. 16-10914, at 2 (11th Cir. Jan. 31, 2018) (en banc) (holding that even self-serving and uncorroborated affidavits may create issues of material fact and preclude summary judgment).

5. Limitation of Liabilities

The final issue is whether the limitation of liabilities clause in the Quotation limits CAD's recoverable damages. Toshiba argues that the court must dismiss CAD's breach of contract claim because, under the Quotation, CAD is limited to damages in the amount it actually paid Toshiba, which is nothing in this case. CAD, in part, asserts that the court cannot enforce the limitation of liabilities clause because the clause fails its essential purpose. The court finds that a jury question exists as to whether the clause fails its essential purpose.

As CAD asserts, and the court recognizes, a limitation of liability clause will not be enforced if it fails its essential purpose. *See* Ala. Code § 7-2-719(2); *Shutter Shop Inc. v. Amersham Corp.*, 114 F. Supp. 2d 1218, 1232 (M.D. Ala. 2000). "[W]here an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either

party of the substantial value of its bargain, it must give way to the general remedy provisions of [Ala. Code. § 7-2-719(2)].” *Moorer v. Hartz Seed Co.*, 120 F. Supp. 2d 1283, 1297 (M.D. Ala. 2000) (quoting Ala. Code. § 7-2-719, Official Comment 1). Although a court can determine as a matter of law that a limitation of liability clause fails its essential purpose, when a genuine issue of material fact arises the issue is one for the jury. *See, e.g.*, *Kennedy Elec. Co., Inc. v. Moore-Handley Inc.*, 437 So. 2d 76, 80-81 (Ala. 1983) (concluding that a limitation of liability clause was effective as a matter of law); *Burbic Contracting Co., Inc. v. Cement Asbestos Products Co.*, 409 So. 2d 1, 5-6 (Ala. 1982) (“The factfinder must find that a limitation of remedies clause fails its essential purpose . . . before it can award damages other than as provided in the limitation.”); *Winchester v. McCulloch Brothers Garage, Inc.*, 388 So. 2d 927, 928 (Ala. 1980).

Here, a reasonable jury could find that the clause’s essential purpose is to ensure that neither party receives a windfall because of a contract dispute. However, the facts and common sense suggest that a sensitive piece of medical equipment like an MRI system is costly to install, uninstall, move, and store. CAD could not return the MRI system back to Toshiba via FedEx as if it had delivered shoes in the wrong size. Assuming that Toshiba breached the contract, CAD would be materially worse off than its pre-contract position because it must bear the costs of returning and/or storing the nonconforming goods. Thus, a jury could find that the clause fails its essential purpose.

Whether the parties intended CAD to bear those costs in this circumstance is unclear. Although the Quotation says that CAD must pay for Toshiba’s repossession of the MRI in the event that CAD fails to pay as agreed, it does not say who pays for removal if CAD were to rightfully reject the goods as nonconforming. Likewise, the limitation of liability clause does not

explicitly place the cost on CAD because it limits *both* parties' damages to zero when CAD does not pay.

As with the wider breach of contract issue, the parties' potential entitlement to damages turns on the facts issues surrounding the formation of the contract. A genuine issue of material fact existing as to those circumstances and neither party being entitled to judgment as a matter of law, the court will DENY both Toshiba's and CAD's motions for summary judgment on their breach of contract claims.

## CONCLUSION

For the reasons stated above, the court will GRANT IN PART Toshiba's motion for summary judgment and DISMISS the promissory fraud and promissory estoppel claims. As to CAD's suppression and breach-of-contract claim and Toshiba's breach-of-contract counterclaim, the court will DENY IN PART Toshiba's motion for summary judgment and DENY CAD's motion for partial summary judgment.

The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 12th day of February, 2018.

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE